UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| ANDREW WALTERS and BROOKLYN WALTERS, Individually, and as Parents and Natural Guardians of L.W., a minor, Plaintiffs, vs. DOLLAR GENERAL CORP., DOLGENCORP INC., ADVANCE INTERNATIONAL INC., and MICHAEL CHUNG ASSOCIATES LTD, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:09-cv-1508-SEB-WGH |

**ORDER GRANTING DEFENDANTS' ADVANCE AND CHUNG MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This cause is before the Court on Defendant Advance International, Inc.'s ("Advance") Motions to Dismiss [Docket Nos. 38 and 52] and Defendant Michael Chung Associates Ltd.'s ("Chung") Motions to Dismiss [Docket Nos. 40 and 54]. Each defendant brought motions to dismiss Plaintiffs' Andrew and Brooklyn Walters (collectively, "Plaintiffs") products liability claim and the subsequent cross-claim filed against them by Defendants Dollar General Corp. and Dolgencorp Inc. (collectively, "Dollar General"). All of these motions were filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons detailed in this entry, we <u>GRANT</u> Defendant Advance's and Defendant Chung's Motions and dismiss both of these Defendants for lack of personal jurisdiction.

**Factual Background**

This lawsuit stems from an incident that occurred on May 25, 2008, when L.W., a minor child, ingested oil from an oval glass patio torch purchased from a Dollar General store in Franklin, Indiana. L.W. and his parents, Andrew and Brooklyn Walters, alleged Dollar General was negligent in selling the torch to the public. In response to Plaintiffs' Complaint, Dollar General identified Advance and Chung as its suppliers of the patio torch. On May 6, 2010, Plaintiffs filed their Amended Complaint asserting negligence by Advance and Chung for manufacturing and/or distributing the torch in a defective condition unreasonably dangerous to the public.

Dollar General has asserted in its Stipulation of Fact with Plaintiffs that it purchased torches like those at issue from Advance. Stipulation of Fact between Pl. and Def. Dollar General ¶ 1. Advance is a Christmas decorations manufacturer which also sells decorations manufactured by other Chinese companies. Def. Advance's Mem. at 2. Advance has denied selling the torches, but admits selling products to Dolgencorp, LLC, presumably a Dollar General entity. Id. at 1. Chung, a broker of products manufactured in China, arranges for the manufacture of goods purchased through Advance, and currently brokers products to Dolgencorp, LLC. Def. Chung's Mem. at 2. Dollar General has acknowledged that it has purchased the torches from Chung as well. Def. Dollar General Cross-Claim ¶ 2.

As part of its relationship with Dollar General, Advance signed a "Dollar General Corporation Supplier Agreement" acknowledging that Dollar General's "business and the

sale of its products are in the United States." Supplier Agreement at 1.  In this agreement, Advance also agreed not to supply any product that violated any law or regulation of any state where Dollar General operates.  Id.  The Supplier Agreement contained an indemnification clause, which provides in relevant part,

> Supplier agrees to indemnify, defend and hold harmless the Company and Company employees, agents or affiliates from any costs, damages, attorneys' fees or other expenses arising from claims relating to supplier products, debts or contractual obligations including, without limitation, the following: Any product liability claim, or claim a product caused or could cause damage or injury . . . .

Supplier Agreement p. 2.  Relying on this provision, Dollar General filed cross-claims against both Advance and Chung on November 17, 2010, [Docket No. 47] which are also the subjects of the instant motions.

Defendant Advance is incorporated in New York, and its primary business activities take place in Hong Kong and China.  See Def. Advance's Mem. at 2. Defendant Chung is a corporation organized under the laws of Hong Kong, and it also engages in business in China.  Def. Chung's Mem. at 2.  Neither Advance nor Chung directly sell goods, maintain any offices or employees, have any customers, or advertise in Indiana.  Defendants Advance and Chung also do not travel to Indiana for business reasons or maintain interactive Web sites where Indiana residents can order goods online. Def. Advance's Mem. at 2; Def. Chung's Mem. at 3.  Because of this lack of direct contacts with Indiana, Defendants Advance and Chung seek dismissal of the claims against them for lack of personal jurisdiction.

## Legal Analysis

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). When a district court rules on a defendant's motion to dismiss based on the submission of written materials, the plaintiff "need only make out a prima facie case of personal jurisdiction" and "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." Id. (internal citations omitted).

A district court may properly exercise personal jurisdiction over a non-resident defendant only if a two-step analysis is undertaken and satisfied. First, the party resisting the exercise of jurisdiction must be amenable to service of process under the state's long-arm statute; second, the exercise of personal jurisdiction must comport with the due process clause of the Constitution. Id. Because Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a), "expand[s] personal jurisdiction to the full extent permitted by the Due Process Clause" (LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 966 (Ind. 2006)), which satisfies the first prong of our analysis, the sole question requiring a response is whether due process would be offended were we to exercise personal jurisdiction over defendants Advance and Chung.

4

For a court to exercise personal jurisdiction over a defendant, due process requires "that the defendant have such 'minimum contacts' with the forum state as will make the assertion of jurisdiction over him consistent with 'traditional notions of fair play and substantial justice[.]'" Lakeside Bridge & Steel Co. v. Mountain State Const. Co., 597 F.2d 596, 600 (7th Cir. 1979), (quoting International Shoe v. Washington, 326 U.S. 310, 316 (1945)). In other words, a defendant must have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." Burger King, 471 U.S. at 472, quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment).

Personal jurisdiction may be either specific or general. A court exercises specific jurisdiction over a defendant where the cause of action arises out of or relates to a defendant's purposefully established contacts with the forum state. Helicopteros Nacionals de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Burger King, 471 U.S. at 472. General jurisdiction, however, "is proper when a defendant has 'continuous and systematic business contacts' with a state and it allows a defendant to be sued in that state regardless of the subject matter of the lawsuit." Premiere Credit of North America, LLC v. AAT Fabrication, Inc., 2005 WL 1123636, at *2 (S.D. Ind. 2005), citing Helicopteros, 466 U.S. at 416; see also Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir.2002); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir.1997).

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the

defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472-473. The due process requirements for specific jurisdiction were summarized in U.S. Schools of Golf, Inc. v. Biltmore Golf, Inc. as follows:

> For specific jurisdiction in a case of this type, due process requires that a non-resident defendant must have established its contacts with the forum state by purposefully availing itself of the privilege of conducting business there. This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. In other words, a defendant's conduct and connection with the forum state should be such that it should reasonably anticipate being haled into court there.

2005 WL 3022005, *4 (S.D. Ind. Nov. 10, 2005) (J. Hamilton) (internal quotations and citations omitted). These contacts must result from defendant's action as opposed to the unilateral action of a third party. Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 780 (7th Cir. 2003) (citing Burger King, 471 U.S. at 474).

The constitutional requirement for general jurisdiction is "considerably more stringent" than that required for specific jurisdiction. Purdue Research Foundation, 338 F.3d at 787 (citing United States v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001)). "[The] contacts [required for general jurisdiction] must be so extensive to be tantamount to [defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." Purdue Research Foundation, 338 F.3d at 787 (7th Cir. 2003).

II. Discussion

A. Advance's Motions to Dismiss

1. Jurisdiction

For this Court to exercise personal jurisdiction over Advance, Plaintiffs and Dollar General must show that Advance has sufficient minimum contacts for either general or specific jurisdiction. Dollar General and Plaintiffs argue that this Court has general jurisdiction over Advance because Advance, which has an office in Illinois, sent an agent to meetings with Dollar General representatives in Tennessee and Kentucky; therefore, they maintain that Advance must have known the products it supplied to Dollar General were being sold in Indiana. However, evidence that an Advance employee traveling to states bordering Indiana does not establish the requisite knowledge of products sold in Indiana.

In fact, Advance has no direct contacts with Indiana, let alone "systematic" contacts. It does not own any property, pay taxes, conduct any business, or have any offices, agents, employees, or affiliated entities in Indiana. Def. Advance's Mem. at 2-3. Thus, it is clear that Defendant Advance lacks sufficient contacts for an exercise of general jurisdiction against it.

As discussed above, in determining whether the Court may exercise specific jurisdiction over a defendant, the defendant must have reasonably foreseen being haled into court on the basis of its own actions. Purdue Research Foundation, 338 F.3d at 780. Plaintiffs and Defendant Dollar General have failed to allege any such foreseeability on

the part of Defendant Advance with regard to being sued in Indiana courts.

Defendant Dollar General cites Nelson v. Park Industries, Inc., 717 F.2d 1120 (7th Cir. 1983) for two propositions. First, that the scope of the foreseeable market "is generally broader with respect to manufacturers and primary distributors of products who are at the start of a distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market." Id. at 1125. Second, the Nelson court determined that personal jurisdiction existed in the Western District of Wisconsin over a foreign manufacturer whose distribution system included visits by the retailer's agents to the manufacturing plant and whose manufacturing director knew the product would be imported into the United States and sold at retail outlets throughout the country. Id. at 1127. However, the Seventh Circuit has more recently posited:

> With the free flow of commerce within the United States today, it may seem counterintuitive that a foreign manufacturer . . . who sells goods to a distributor in the United States should not be assumed to have the expectation that its goods may end up for sale in any one of the fifty states. But the Supreme Court stressed in *World-Wide Volkswagen* that although the United States was meant to be a "common market," state lines are not "irrelevant for jursidictional purposes." For this reason, at least in diversity cases, personal jurisdiction may not be exercised over a nonresident defendant unless "minimum contacts" between the **particular state** in which the court sits and the defendant have been established.

Jennings v. AC Hydraulic A/S, 383 F.3d 546, 551 (7th Cir. 2004) (emphasis added, internal citations omitted).

In the case at bar, Advance signed a Supplier Agreement with Dollar General in which it acknowledged that Dollar General sold its products in the United States.

8

Supplier Agreement at 1, 4. Plaintiffs and Defendant Dollar General assert that signing this agreement satisfies the foreseeability requirement. We disagree. Plaintiffs and Defendant Dollar General have failed to allege any facts that could establish that Advance could have foreseen being haled specifically into Indiana courts, as required by Jennings. In fact, although Steven Jacobson, Senior Buyer for Dollar General, provided testimony that shows Advance **may** have been told that Dollar General sells products in thirty-five states, he admitted that this information is not always given to prospective suppliers[1] and that he did not know whether Advance received this information. See Jacobson Dep. at 79, 92 (emphasis added).

Plaintiffs and Dollar General also maintain that the Supplier Agreement put Advance on notice that it might be subject to jurisdiction of Indiana courts because it "expressly acknowledg[es] that Dollar General would sell its products in every state where Dollar General does business." Def. Dollar General's Resp. at 6. However, after a careful review of the record, we have not succeeded in locating such a statement. The portion of the Supplier Agreement that Plaintiffs and Dollar General presumably are referencing states:

> Supplier recognizes the Company's business and the sale of its products are in the United States. Supplier will not supply any product or take any act on behalf of the Company that in any way violates any law or regulation of the United States or any state where the Company operates . . . .

---

[1] Mr. Jacobson testified, "**when they ask** about expansions, generally, it's within [the] 35 states we operate right now." Jacobson Dep. at 92 (emphasis added).

Supplier Agreement at 1. This provision notifies Advance that the goods it supplies to Dollar General will be sold in the United States and therefore Advance needs to comply with the laws of any state in which Dollar General operates, but the agreement does not provide that all products will be sold in all states where Dollar General does business. Thus, Advance did not necessarily know the torches would be sold in Indiana simply because it is a state within which Dollar General does business. Plaintiff also argues that, by agreeing not to violate any law of a state where Dollar General does business, Advance implicitly consented to be subject to those states' laws. Again, however, Plaintiff fails to allege that Advance was aware that Indiana was one of those states. Because Plaintiffs and Defendant Dollar General have failed to adequately support their allegation that Advance was aware its products would be sold in Indiana, Plaintiffs and Dollar General have not met their burden for establishing foreseeability and the minimum contacts necessary to permit the Court to exercise specific jurisdiction.

Dollar General alone seeks to prove the Court's jurisdiction over Advance with regards to its cross-claim based on language in the Seller Agreement indemnification clause which, Dollar General contends, should be read broadly enough to establish that Advance should reasonably have foreseen being haled into an Indiana court. The indemnification clause reads:

> Supplier agrees to indemnify, defend and hold harmless the Company and Company employees, agents or affiliates from any costs, damages, attorneys' fees or other expenses arising from claims relating to supplier products, debts or contractual obligations including, **without limitation**, the following: Any product liability claim, or claim a product caused or could

cause damage or injury . . . ."

Supplier Agreement at 2 (emphasis added). Dollar General urges the Court to read "without limitation" to extend to jurisdiction. We decline to do so. Dollar General's interpretation would render Advance amenable to jurisdiction in any court in the world and undermine the rationale behind the personal jurisdiction due process requirements, namely, that defendants should be able "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Additionally, Dollar General's proposed interpretation of the Supplier Agreement does not comport with traditional canons of contract interpretation. The parties submitted a sample order form with the Supplier Agreement. The order form also contains an indemnification clause including the "without limitation" language. Supplier Agreement at 9. The order form also provides, "Either the Circuit Court of Davidson County, Tennessee, or the United States District Court for the Middle District of Tennessee in Nashville, Tennessee shall have **exclusive** and proper jurisdiction and venue over any disputes arising from this Order." Id. (emphasis added). If the indemnification clause "without limitation" language were interpreted to apply to jurisdiction, it would render the jurisdiction clause meaningless. Because "[a]n interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous," Richard A. Lord, Williston on Contracts § 32:5 (4th ed. 2010), we decline to interpret "without limitation" applicable to personal jurisdiction.

11

Because Plaintiffs and Defendant Dollar General have failed to show that Advance was aware its products would be sold in Indiana, we find that it was not foreseeable to Advance that it would be haled into an Indiana court. Therefore, this Court lacks personal jurisdiction over Advance.

### 2. Plaintiffs' Request for Additional Discovery

A court is not required to allow additional discovery if it is unlikely to yield evidence of contacts sufficient for a finding of personal jurisdiction. See GCIU-Employer Retirement Fund v. Goldfarb Corp., 565 F.3d 1018, 1027 (7th Cir. 2009). Plaintiffs have requested additional discovery on the personal jurisdiction issue because they claim Advance refused to answer certain interrogatories. Advance responds that it only refused to answer questions that were irrelevant to the issue of personal jurisdiction.

Upon review of the interrogatories, the Court agrees with Advance that most of the questions Advance objected to are irrelevant to the personal jurisdiction inquiry. [2] However, one question merits further discussion. Plaintiffs' Interrogatory No. 4 asks that Advance "[i]dentify your top 20 customers or buyers located within the United States, besides Dollar General Corp.,.[sic] with whom Advance did business from 2004 through 2008 inclusive. For purposes of this interrogatory, 'Top 20 customers' should be interpreted as total dollars in sales:" Def. Advance's Answers to Pl.'s First Set of

---

[2] These questions asked Advance to identify its manufacturers and suppliers, provide information on other lawsuits involving citronella oil patio torches, list employees who have been deposed during litigation regarding the safety of citronella patio torches, and identify insurers.

Interrogatories at 2.  Theoretically, if Advance had numerous customers in Indiana, a response to this question could potentially be relevant to a finding of personal jurisdiction.  However, because Advance has already established through Herbert A. Feinberg's Declaration that Advance does not have **any** customers in Indiana, Feinberg Declaration at ¶18, allowing Plaintiffs to pose this question to Advance will not yield any evidence that would support a finding of personal jurisdiction.  Therefore, Plaintiffs' request for further discovery is denied.

> **B.** **Chung's Motions to Dismiss**

As discussed above, "[O]nce the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." Purdue Research Foundation, 338 F.3d at 782.  Chung moved to dismiss for lack of personal jurisdiction on July 12, 2010.  Although Plaintiffs moved for extensions of time to respond until November 26, 2010, neither Plaintiffs nor Defendant Dollar General ever responded to Chung's motions to dismiss directed both to the Plaintiff's claim and Defendant Dollar General's cross-claim.  Plaintiffs have not provided any evidence, beyond their assertion in the Amended Complaint that Chung "manufactured and or distributed the citronella torch," Amended Complaint at ¶16, to establish sufficient minimum contacts with Indiana under either general jurisdiction or specific jurisdiction theories.  Similarly, Dollar General has not provided any evidence beyond a statement in its Cross-Claim that Dollar General bought the torches from Chung that would show Chung was aware the torches

13

would continue down the supply chain to Indiana. Therefore, because neither Plaintiffs nor Dollar General have met their burdens of proof necessary to establish personal jurisdiction, the Court cannot and shall not exercise personal jurisdiction over Chung.

## **Conclusion**

Having found insufficient contacts between either Advance or Chung and the State of Indiana to warrant an exercise of personal jurisdiction over them, we hereby GRANT Defendants' Motions to Dismiss (without prejudice) for Lack of Personal Jurisdiction in their entirety, and DENY Plaintiffs' Request for Additional Discovery. Because, pursuant to Federal Rule of Civil Procedure 54(b) we find no just reason for delay, final judgment in favor of these Defendants will enter accordingly.

IT IS SO ORDERED.

Dated: 02/24/2011

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Tony H. Abbott
ABBOTT HARRIS & PERRELLI
tabbott@ahpalegal.com

Danford Royce Due
DUE DOYLE FANNING & METZGER
ddue@duedoyle.com

Jennifer Jay Kalas
HINSHAW & CULBERTSON
jkalas@hinshawlaw.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

John G. Shubat
WILSON KEHOE & WININGHAM
jshubat@wkw.com

William E. Winingham
WILSON KEHOE & WININGHAM
winingham@wkw.com